Pee. Cueiam.
 

 Jacob Garrison entered 640 acres of land on the 6th of August, 1807. On the 14th of August, John Curtis entered 200 acres within the bounds of Garrison’s 640 acres. Curtis procured a grant and conveyed to the defendant. Garrison, as alleged in the bill, sold his 640 acre entry to Harder for a valuable consideration actually paid, executed a bond to convey, and Harder took possession. The complainant, Thomas Shute, on the 80th of March, 1808, entered 340 acres within the bounds of Garrison’s entry. And entered a
 
 caveat
 
 to prevent a grant from issuing on the entry, which was finally decided in favor of Garrison’s entry. During the pendency of the caveat, a judgment was rendered against Harder at the suit of R. Huggins, execution issued, and was levied on the entry of 640 acres, and at the sale by the sheriff, Asa Shute purchased the land. He is since dead, and the plaintiff, in behalf of' himself and the other heirs, filed this bill to prevent Harder from proceeding on tire judgment in the caveat, and from procuring a grant for the land in his own or any other name. To this bill there isa demurrer.
 

 It was argued that the 5th of George II. ch. 7, was not in force, but only the act of 1794. The answer is that all executions against lands are founded upon it. It enforced * the 3 and 4 William and Mary against fraudulent devises, and that part of the act of Charles II. ch. 29, which subjects estates in trust to executions. Real estate is the term used in the act of George II.; the same term is used in the act of North Carolina, 1784, ch. 11. Trusts express and resulting are liable; trusts implied, in favor of an obli-gee to whom a conveyance is to be made and the obligation transferred to an assignee, are said to be without the scope of the act. We had better consider awhile of the opinion to be formed upon hose latter points. If the interest of the obligee be not salable under execution, neither is that of the obligor or covénantor who is bound to make title ; and then by the simplest operation in the world the land becomes not liable to execution in the hands of any one. Vide Sand. on Uses, 51; 1 P. W. 278.
 

 It is said when execution is taken out and returned, that equity
 
 *506
 
 will then subject the trust, be it of what kind it may. ' It seems strange to subject that which by law is not liable. But how will you ever get an execution against an executor or heir who has not legal assets ? Will not the heir plead that he has no assets ? Will not the executor do the same ? That will certainly prevent judgment. 1 Vern. 173; and as to mere equities, see 2 Vern. 55, 61.
 

 Perhaps the bond to convey may be considered in equity a legal transfer of the entry, and then the dispute would be at an end.
 

 Where equities are made assets, perhaps they are only equitable assets, and to be disposed of to creditors
 
 pari passu.
 

 See
 
 Russell
 
 v.
 
 Stinson,
 
 3 Hay. 1, and note
 
 sub Jin.